UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

SHABBIR HOSSAIN and
RITA HOSSAIN,

    Debtors.

SHABBIR HOSSAIN and
RITA HOSSAIN

    Plaintiffs,

v.

BANK OF AMERICA, N.A.;
GULF COAST BANK AND TRUST
COMPANY; REGIONS BANK

    Defendants.

Case No.: 11-04985-MAM

Adv. Proc. No. 12-00040

**ORDER ON DEBTORS COMPLAINT TO DETERMINE THE VALUE OF SECURITY AND CREDITORS ALLOWED SECURED CLAIMS**

Barry A. Friedman , Attorney for the Debtor, Mobile, Alabama
W.L. Longshore, III, Attorney for Regions Bank, Birmingham, Alabama
Jeffery J. Hartley, Attorney for the Chapter 13 Trustee, Mobile, Alabama

This matter is before the court pursuant to the Debtors' complaint to determine the value of their homestead and three mortgage liens encumbering the property in order to invalidate the third lien in favor of Regions Bank. The court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the court has authority to enter a final order. For the reasons discussed below, the court finds that Regions Bank's lien is wholly unsecured and can be "stripped off" of the Debtors' homestead and treated as an unsecured claim.

1

FACTS

Debtors Shabbir and Rita Hossain filed a Chapter 13 bankruptcy petition on December 6, 2011. In Schedule A of their petition, the Debtors included a piece of real property that they use as their homestead located at 3120 Teal Court, Mobile, Alabama (the "property"). The Debtors scheduled the value of the property as $222,000, but later amended that amount to $212,000. The Debtors filed a proposed Chapter 13 plan on January 13, 2012. The plan proposes to keep the property, cure any defaults, and maintain direct payments to creditors holding liens against the property.

On the petition date, the property was encumbered by three mortgages. No dispute exists as to the priority of those three liens. The first mortgage is in favor of Bank of America, N.A. ("BOA"). BOA's lien attached to the property in August of 2003 and was scheduled as a $124,000 secured claim in the petition. BOA filed a proof of claim on June 27, 2012 and valued its claim at $131,975.90. Gulf Coast Bank and Trust Company ("Gulf Coast") holds the second lien on the property from a transaction that occurred in December of 2006. Gulf Coast's lien was scheduled at $100,000. Like BOA, Gulf Coast filed a proof of claim in June of 2012 and valued its claim at $82,850.67. The Debtors did not object to BOA's or Gulf Coast's proofs of claim and this court accepts $131,975.90 and $82,850.67 as the correct values for their respective liens.[1] Regions acquired a third lien on the property in September of 2008. Regions filed a proof of claim on January 18, 2012 in the amount of $113,710.95.

Regions lien is the subject of the dispute in this case. The Debtors do not object to the amount of Regions lien. Instead, the Debtors seek to "strip off" Regions lien and treat its entire value as an unsecured claim. The Debtors filed this adversary proceeding on April 11, 2012

---

[1] BOA and Gulf Coast were dismissed as defendants in this adversary proceeding by the Debtors prior to the court taking this matter under advisement.

2

asking this court to determine the value of the property and its encumbrances in order to establish that there is no equity in the property to which Regions lien can attach. The Debtor argues that the aggregate values of the first and second liens held by BOA and Gulf Coast exceed the value of the property and, thus, that Regions lien is wholly unsecured. BOA and Gulf Coast's liens total $214,826.57. The Debtors submitted an appraisal completed by Greg Maples, a certified appraiser in Alabama, valuing the property at $210,000 as of May 25, 2012. Mr. Maples utilized the sales comparison approach to valuation and considered five comparable properties closely located to the property in his calculation.

Regions disputes the Debtors' valuation of the property. Regions argues that the relevant time for valuation of the property is the petition date. Regions submitted a record from the Mobile County Tax Commissioner which valued the property at $239,300 for the tax year 2011. The record does not include the date that the valuation was completed, only that it was used to calculate the Debtors property tax bill for the tax year 2011. Regions also argues that the Debtors initially scheduled the property at $222,000 on the petition date.

The Trustee submitted a more recent appraisal for this court's consideration. That appraisal was completed by certified appraisers at The Sullivan Appraisal Company ("Sullivan"). Like appraiser Greg Maples, Sullivan utilized a sales comparison analysis, comparing the property to three nearby properties. Sullivan determined that that the value of the property was $182,000 as of October 30, 2012. It is clear to the court that the property has declined in value in the last few years. In support of that point, the Debtor submitted a record from the Tax Commissioner indicating that the market value of the property for tax assessment purposes was $219,200 in 2012; $239,300 in 2011; $243,100 in 2010; and $249,500 in 2009. This is not surprising given the condition of the real estate market in recent years.

3

## LAW

The question in this case is whether Regions third priority lien is wholly unsecured and subject to being stripped from the Debtors principal residence. The issue is somewhat complicated by the fact that 11 U.S.C. § 1322(b)(2) prohibits modification of a security interest in a debtor's principal residence. However, 11th Circuit precedent dictates that a security interest in a debtor's principal residence can be avoided where the interest is wholly unsecured. *Tanner v. FirstPlus Financial, Inc.*, 217 F.3d 1357, 1360 (11th Cir. 2000) (specifically finding that § 1322(b) does not prevent modification of a wholly unsecured lien in a debtor's principal residence in a Chapter 13 case); *see also In re McNeal*, 477 Fed.Appx. 562, 564 (11th Cir. 2012) (finding that the conclusion in *Folendore v. United States Small Bus. Admin.*, 862 F.2d 1537 (11th Cir. 1989) that an allowed claim in a Chapter 7 case that is wholly unsecured is voidable under § 506 remains binding precedent in the 11th Circuit).

That being said, it must be determined whether Regions lien is wholly unsecured. The answer to that question is dependent on the value of the property and the value of the two liens that prime Regions lien. 11 U.S.C. § 506(a) details the extent to which a claim is secured and how a secured creditor's collateral is to be valued. The two priming liens total $214,826.57. Therefore, if the property is worth less than $214,826.57, then no equity exists to which Regions lien can attach. However, if the property is worth more than $214,826.57, then Regions lien remains secured by the property. Moreover, in that circumstance, Regions lien is secured as to its entire value because of § 1322(b)'s anti-modification clause. *In re Gilpin*, 479 B.R. 905, 909 (Bankr. M.D. Fla. 2011). Thus, the ultimate issue in this case is the value of the property.

To determine the value of the property, two preliminary questions must be resolved. First, it is necessary to determine the appropriate reference date for valuation of the property. 11

U.S.C. § 506(a)(2) designates the petition date as the appropriate date for valuation of personal property collateral. However, as the property in this case is real property, § 506(a)(2) does not resolve the issue. The bankruptcy court in *In re Gilpin*, 479 B.R. at 907-08, held that when dealing with real property collateral, the appropriate date for valuation is determined by considering the "proposed disposition or use" of the collateral to be valued. The "proposed disposition or use" language is derived from § 506(a)(1) which mandates that a valuation under 506(a) "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property."

In this case, as exhibited by their proposed Chapter 13 plan, the Debtors intend to keep the property as their homestead. The *Gilpin* court explained that when a debtor proposes to keep the collateral to be valued, the petition date is the appropriate date. *Id*. at 907-908 (citing cases in accordance). The *Gilpin* court reasoned that the debtors in that case established their intent to keep their home at the outset of the case and that the intent had not changed. *Id*. This court agrees with that reasoning, but acknowledges that circumstances related to the proposed disposition or use of property to be valued could dictate a different valuation date in future cases. In this case, the petition date of December 6, 2011 is the appropriate valuation date.

The second preliminary issue is the appropriate weight to give the valuation evidence currently before the court. The Debtor and the Trustee submitted professional appraisals to determine the value of the property. Regions relies on the records of the Mobile County Tax Commissioner. The answer to whether this court should give more weight to one versus the other lies again in § 506(a)(1)'s requirement that "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." The United States Supreme Court in *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997), found the

5

Case 12-00040    Doc 30    Filed 11/27/12    Entered 11/27/12 13:44:51    Desc Main
Document      Page 5 of 7

question of proposed disposition or use of property to be of "paramount importance to the valuation question." In this case, the Debtor's choice to keep the property informs the result.

The bankruptcy court in *In re Strever*, 468 B.R. 776, 780 (Bankr. D.S.C. 2012), held that "[a] debtor intending to keep his real property finds a higher value in its retention than its surrender and intends to realize its higher value in any disposition." In line with that, the *Strever* court held that professional appraisals which utilized the sales comparison approach were more indicative of a debtor's property value than records of foreclosure sales or active listings when a debtor intends to keep the property to be valued. *Id*. at 781-82. Specifically, the court stated "[c]omparing the sales of similar homes sold in arm's length transactions between two individuals, adjusted for the material differences from the property being appraised, is the proper way [to] determine a property's market value for the purpose of § 506(a)(1) and § 1322(b)(2)." Other courts have held that professional appraisals derived from the sales comparison approach more correctly value a property when a debtor chooses to keep the property in his or her Chapter 13 case. *See Gilpin*, 479 B.R. at 909 (relying on a professional appraisal rather than a County Appraiser's records); *In re Petrella*, 230 B.R. 829, 834 (Bankr. N.D. Ohio 1999) (relying on a professional appraisal rather than personal opinions of value from the debtors and a noncertified copy of the debtors real property tax valuation); *In re McCarron*, 242 B.R. 479, 482 (Bankr. W.D. Mo. 2000) (rejecting valuation that "was prepared for tax assessment purposes only"). In accordance, this court will rely upon the professional appraisals submitted to the court rather than the Tax Commissioner's records to determine value.

None of the evidence submitted to the court provides an exact value of the property as of the December 6, 2011 petition date. Of the two professional appraisals before the court, the Debtors' appraisal of May 25, 2012 is the closest to the petition date and the court adopts its

value of $210,000 as the value of the property. *See Gilpin*, 479 B.R. at 909 *and In re Valls*, 2010 WL 2745951, at *2 (Bankr. S.D. Fla. July 6, 2010) (both courts accepting the appraisal value closest in time to the petition date). The Debtors' appraisal was conducted by a certified appraiser who reviewed recent sales of five comparable homes in close proximity to the Debtors' property and made adjustments based upon differences in the physical characteristics of the homes and the nature of the sales. The court finds the Debtors' appraisal value to be credible.

Based upon those conclusions, no equity exists in the property for Regions lien to attach. The two priming liens value of $214,826.57 exceeds the $210,000 value of the property. Thus, Regions lien is wholly unsecured and can be "stripped off" the property pursuant to § 506 and 11th Circuit precedent. It is important to note that this court's choice to use the Debtors appraisal value instead of the Trustee's appraisal value did not alter the conclusion. Regions lien would have been invalidated using either value.

THEREFORE IT IS ORDERED

1. Regions Bank's lien is wholly unsecured and shall be avoided from the Debtors homestead property;

2. A separate judgment consistent with this order shall be entered in favor of the Debtors.

Dated: November 27, 2012

*/s/ Margaret A. Mahoney*
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE